UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EARL BUTLER,

       Plaintiff,

v.                                                                              Case No. 8:20-cv-382-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

       Defendant.

_____/

## O R D E R

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  For the reasons discussed below, the Commissioner's decision is affirmed.

### I.

The Plaintiff was born in 1961, has a tenth-grade education, and has past relevant work experience as a painter. (R. 44, 550).  In April 2013, the Plaintiff applied for SSI and DIB, alleging disability as of July 2011 due to problems with his hips, ankles, feet, and left leg. (R. 70–77, 78–87).  The Social Security Administration (SSA)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

denied the Plaintiff's application both initially and on reconsideration. (R. 76, 84, 96, 106).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in July 2014. (R. 37–69, 140–41). The Plaintiff was represented by counsel at that hearing and testified on his own behalf. (R. 37, 41–56). A vocational expert (VE) also testified. (R. 56–68).

In a decision issued in January 2015, the ALJ found that the Plaintiff was not disabled. (R. 18–31). The Plaintiff appealed that decision, first to the Appeals Council and then to this Court (R. 1–4, 17, 18–36), which ultimately resulted in the matter being remanded for further consideration (R. 557–63). On remand, an ALJ held another hearing, at which the Plaintiff was again represented by counsel and again testified on his own behalf. (R. 525, 529–46). A VE testified again as well. (R. 546–55).

In a decision issued in January 2019, the ALJ found that the Plaintiff: (1) had not engaged in any substantial gainful activity since his alleged onset date in July 2011; (2) had the severe impairments of gout, hypertension, hyperlipidemia, diabetes mellitus, degenerative disc disease of the cervical and lumbar spines, and osteoarthritis/degenerative changes in the hips and knees; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform a restricted range of light work; (5) based on the VE's testimony,

2

could not engage in his past relevant work but was capable through mid-April 2016 of making a successful adjustment to other jobs that exist in significant numbers in the national economy; and (6) advanced to an older age category in mid-April 2016 and became disabled as of that date. (R. 507–15, 517).

The Appeals Council denied the Plaintiff's request for review. (R. 492–95). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While courts will defer to the Commissioner's factual findings, they afford no such deference to her legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

The Plaintiff raises three main claims on appeal: (1) the ALJ did not properly evaluate certain medical opinions of record; (2) the ALJ erred in his assessment of a portion of the Plaintiff's alleged disability period—known as a "closed period;" and (3) the ALJ failed to credit the Plaintiff's subjective complaints of pain and other symptoms. (Doc. 19 at 15–30, 30–38). The Commissioner counters that the ALJ correctly followed the governing law and that his decision is adequately supported. Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds the Plaintiff's claims to be without merit.

## A.

At step four of the sequential evaluation process, an ALJ must determine the claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide what a claimant can

do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* § 404.1545(a)(1). In making this finding, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [his] impairment(s), and [his] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). In rendering this assessment, an ALJ must take into account: (1) whether the provider at issue has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). While an ALJ must balance each of these factors,

he is not obligated to address them explicitly in his decision. *Lawton*, 431 F. App'x at 833.

Medical opinions are divided into three tiers: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citations omitted). Treating physicians' opinions are typically accorded the most deference because there is a greater likelihood that these providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam). As a result, the ALJ must give the opinion of a treating physician substantial or considerable weight unless the ALJ clearly articulates reasons—buttressed by substantial evidence—that establish "good cause" for discounting that opinion. *Hargress*, 883 F.3d at 1305–06; *Phillips*, 357 F.3d at 1241. "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted).

Unlike a treating physician, the opinion of a non-treating, examining physician "[i]s not entitled to great weight." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)). And the opinion of a non-treating, non-examining physician is generally afforded the least deference. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F.

7

App'x 830, 832 (11th Cir. 2017) (per curiam) (citations omitted).   In the end, irrespective of the category of the physician, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)) (emphasis in original).

In this case, the Plaintiff takes issue with the ALJ's evaluation of the medical opinions of three of the Plaintiff's providers: (1) Dr. Margo Sardo; (2) Dr. Robin Hughes; and (3) Dr. Edmund Molis.  The ALJ gave "little weight" to Dr. Sardo's and Dr. Hughes's opinions and "some weight" to Dr. Molis's opinion.  (R. 514).  The Plaintiff's quarrel with each of these determinations will be addressed in turn.

1.

Dr. Margo Sardo was the Plaintiff's treating physician from December 2012 to May 2015[4] (Doc. 19 at 4, 8) and, pertinent to the Plaintiff's arguments here, completed Multiple Impairment Questionnaires in July 2013 and September 2013 that summarized the Plaintiff's conditions (R. 363–70, 410–17).   In the July 2013 questionnaire, Dr. Sardo diagnosed the Plaintiff with gout, degenerative disc disease in his lumbar spine,[5] and bilateral pain in his knees, hips, shoulders, and hands.  (R.

---

[4] The ALJ referred to Dr. Sardo as the Plaintiff's treating physician, and neither party disagrees with that characterization.  The Court will therefore do the same.

[5] Broadly speaking, the human spine consists of four parts: the cervical spine (i.e., the neck); the thoracic spine (i.e., the upper and/or middle back); the lumbar spine (i.e., the lower back); and the sacral spine (i.e., the lowest part of the spine, which is just above the coccyx).  *See generally* Houston D. Smith, *Georgia Soft Tissue Injuries* § 3-8 (Supp. Apr. 2021).  The location of the vertebrae in the cervical, thoracic, lumbar, and sacral spine are referred to as C1, 2, 3, etc.; T1, 2, 3, etc.; L1, L2, L3, etc.; and S1, 2, 3, etc., respectively.  *See* 4 Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., L.L.N., *Attorney's Textbook of Medicine* § 13A.02 (3d ed. 2021).

363, 370). The clinical findings Dr. Sardo referenced in that questionnaire included, among others, knee swelling, an antalgic gait, the Plaintiff's use of a cane, and a limited range of motion in his shoulders. (R. 363). Dr. Sardo also cited x-rays showing degenerative changes to the discs in the Plaintiff's lumbar spine at the L2-3 level. (R. 356, 364). In addition, Dr. Sardo noted the Plaintiff's reported symptoms of insomnia, fatigue, nausea, feet numbness, decreased appetite, mood changes, knee swelling, back pain, and pain in most joints. (R. 364). Dr. Sardo further stated that these symptoms were consistent with the Plaintiff's documented impairments and that his limitations included not being able to push, pull, kneel, bend, or stoop, as well as having a significantly reduced capacity to perform repetitive reaching, handling, fingering, and lifting due to joint pain in his hands. (R. 364, 366, 369). Finally, Dr. Sardo opined that these restrictions and impairments had been present since December 4, 2012, when she first saw the Plaintiff. (R. 369). Dr. Sardo's assessments in the September 2013 questionnaire were largely the same as in her July 2013 questionnaire, except that she listed June 2010 as the date on which the Plaintiff's limitations began and added that the Plaintiff needed to avoid extreme cold temperatures. (R. 416).

Dr. Sardo's treatment notes for the duration of the time she cared for the Plaintiff reflect substantially the same subjective complaints as those described in her two questionnaires. *See, e.g.*, (R. 383). The additional findings she referenced in her notes for 2012 included that the Plaintiff moved slowly and deliberately and appeared to be in pain, and that he had reproducible neck pain with resisted strength testing of

9

the upper extremities, as well as tenderness to palpation over the knees.  (R. 381, 384).

Dr. Sardo also observed that there was no effusion in the Plaintiff's musculoskeletal

system, that he had a normal gait and stance, and that he used a cane.  (R. 381).

In her notes in 2013, Dr. Sardo continued to reference the Plaintiff's use of a

cane but did not mention any joint swelling.  (R. 378, 406, 473).  A July 2013 x-ray of

the Plaintiff's lumbar spine revealed mild degenerative disc disease at the L2-3 level

with mild anterior hypertrophic spurring.  (R. 356).  Another x-ray in October 2013

showed mild spurring in the hips with no acute bone abnormality, as well as mild

osteoarthritis in both knees, moderate effusion on the right knee, and a small effusion

on the left knee.  (R. 470–71).  While Dr. Sardo commented in May 2013 that the

Plaintiff's "pain was out of proportion to [his] exam findings" (R. 406), the Plaintiff's

subsequent visits to her documented no improvement in his alleged pain or other

significant changes through May 2015 (R. 449–51, 453–61, 475–91, 714–27).  Finally,

in July 2014, the Plaintiff had an x-ray that did not indicate an issue with his shoulder.

(R. 1100).

In his decision, the ALJ mostly rejected Dr. Sardo's opinions expressed in the

two questionnaires, noting that he "suspect[ed] that [Dr. Sardo's] assessments . . . were

based more so on the [Plaintiff's] reports to [her], as opposed to any independent"

evaluation from Dr. Sardo herself.  (R. 511–12).  The ALJ also observed, *inter alia*, that

Dr. Sardo "assigned many limitations that fly in the face of [her] treatment notes," and

that she provided conflicting onset dates for the Plaintiff's limitations as well.  *Id.*

10

The Plaintiff now argues that the ALJ erred in not affording Dr. Sardo's opinions controlling weight because he "failed to identify any findings contradicting the opinion[s] from Dr. Sardo that rise to the level of substantial evidence."[6]  (Doc. 19 at 20–21).  In support of this broad claim, the Plaintiff asserts that the ALJ committed a number of mistakes in evaluating the record documentation compiled by Dr. Sardo, beginning with the ALJ's finding that the restrictions imposed by Dr. Sardo "are based solely on [the Plaintiff's] subjective allegations rather than [on] appropriate clinical and objective evidence."  (Doc. 19 at 17).  This argument fails.

To begin, contrary to the Plaintiff's contention, the ALJ did not find that Dr. Sardo's limitations were predicated purely on the Plaintiff's subjective complaints. Instead, the ALJ provided several justifications for discounting Dr. Sardo's assessments, including Dr. Sardo's primary reliance on the Plaintiff's reported symptoms, various conflicts between her restrictions and her treatment notes, and certain other discrepancies in her opinions.  There is nothing improper about the ALJ's assigning diminished weight to Dr. Sardo's assessments based on these reasons.  *See Womble v. Comm'r of Soc. Sec.*, 705 F. App'x 923, 926–28 (11th Cir. 2017) (per curiam) (upholding the ALJ's decision to assign little weight to the opinions of treating doctors where those opinions were "not supported by the doctors' own treatment notes, the objective medical evidence, and appear[ed] to have been based primarily on [the claimant's] subjective complaints"); *Crawford*, 363 F.3d at 1159–60 (affirming the

---

[6] The Court has reordered the Plaintiff's arguments for purposes of its analysis.

ALJ's decision to discount a treating physician's opinion which was based primarily on the claimant's subjective complaints of pain, was inconsistent with the physician's treatment notes, and was unsupported by the medical evidence).

Furthermore, the ALJ's reasons are supported by substantial evidence. As an example of Dr. Sardo mostly predicating her restrictions on the Plaintiff's subjective complaints, in a September 2013 treatment note, she compared the assessments reflected in her September 2013 questionnaire with those listed in her July 2013 questionnaire, and determined that the Plaintiff "was consistent in the symptoms and limitations *he described*" in both reports. (R. 467). As the ALJ alluded to in his decision (R. 512), the clear implication of this comment is that Dr. Sardo filled out both forms based on what the Plaintiff said (R. 467).

This conclusion is bolstered by the fact that the limitations set forth in Dr. Sardo's September and July 2013 questionnaires conflict with the objective findings listed in her own treatment notes, further indicating that she relied on the Plaintiff's subjective statements in completing the questionnaires. *Id.* For instance, as the ALJ observed, Dr. Sardo "identified almost no regular issue with fine/gross manipulation or handling" in her visitation records yet she stated in her questionnaires that the Plaintiff had "significant limitations in doing repetitive reaching, handling, fingering, or lifting" because of pain in his hands. (R. 512); *see also* (R. 366, 413).

With respect to the conflict between Dr. Sardo's notes and the restrictions she imposed, as the ALJ pointed out, Dr. Sardo opined in the two questionnaires that the

12

Plaintiff could not push, pull, kneel, bend, or stoop due to pain, yet acknowledged in her own underlying records that the Plaintiff's subjective complaints were disproportionate to her exam findings, including the virtual absence of swelling, effusion, or issues with the Plaintiff's strength.   (R. 369, 416, 512).   Other documentation in the record cited by the ALJ also refutes Dr. Sardo's limitations, such as the negative left shoulder x-ray and the mild nature of the Plaintiff's osteoarthritis and the disc degeneration in his spine, which—taken together—rebuts Dr. Sardo's findings as to the Plaintiff's strength and dexterity.  (R. 470–71, 512, 986–1069, 1070–1101).

Finally, as for the matter of Dr. Sardo's reference to conflicting onset dates, as the ALJ noted, in Dr. Sardo's July 2013 questionnaire, she found that the earliest date that the Plaintiff's restrictions applied was December 4, 2012, which was when she first began treating the Plaintiff.  (R. 369).  Two months later, in her September 2013 questionnaire, however, Dr. Sardo changed her earlier assessment and offered— without explanation—that the Plaintiff's limitations dated back to June 2010.  (R. 416).  The ALJ found this inconsistency notable because not only did Dr. Sardo's differing onset dates conflict with each other, but the latter date did not comport with the Plaintiff's own claimed onset date of July 1, 2011, and also pre-dated the Plaintiff's establishment of care with Dr. Sardo by more than two years.  (R. 511–12).

In an effort to overcome these discrepancies, the Plaintiff asserts that Dr. Sardo's amended onset date in the September 2013 questionnaire is buttressed by the

doctor's statement in the July 2013 questionnaire that the Plaintiff "reported pain for years." (R. 369; Doc. 19 at 20). The problem with this argument is that, as the Commissioner observes, Dr. Sardo did not rely on this rationale as a justification for modifying the onset date to June 2010. In fact, as noted, she did not offer any justification at all.

Even were that not the case, the Court reviews an ALJ's decision under the substantial evidence standard to determine if his findings are adequately supported. *Hargress*, 883 F.3d at 1305 n.2; *Crawford*, 363 F.3d at 1159. One could reasonably conclude from a fair reading of Dr. Sardo's two opinions that they are contradictory simply because the two dates are different and because there is no record evidence to support Dr. Sardo's decision to move the onset date back almost two-and-a-half years. *Hargress*, 883 F.3d at 1306 (finding that an ALJ's decision to give a treating physician's opinion little weight was supported by substantial evidence because it was not bolstered by the record as a whole).

The Plaintiff alternatively asserts that, in light of the unexplained inconsistency in the two onset dates, the ALJ should have contacted Dr. Sardo regarding the matter "or at least made his concerns known to counsel for [the] Plaintiff to assist in clarifying the issue." (Doc. 19 at 20). This assertion fails as well.

It is well-established that an ALJ has a basic obligation to develop a full and fair record. *Washington*, 906 F.3d at 1359; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In accordance with this obligation, an ALJ should recontact a claimant's

14

treating physician if the evidence in the record is "otherwise inadequate" to determine whether the claimant is disabled. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (per curiam) (citations omitted); *see also* 20 C.F.R. §§ 404.1512(b), 416.912(b). In evaluating the necessity for remand based on a failure to develop the record, the Court is guided by whether the record reveals evidentiary gaps resulting in "clear prejudice" to the claimant. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam) (citation omitted). A court may find clear prejudice where (1) an evidentiary gap exists that the claimant contends supports her allegations of disability, or (2) the claimant can show that the ALJ's decision would have changed in light of additional information in the record. *Mosley v. Acting Comm'r of Soc. Sec.*, 633 F. App'x 739, 742 (11th Cir. 2015) (per curiam) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam)); *see also Robinson*, 365 F. App'x at 999 (finding that an ALJ's failure to recontact treating and consultative doctors did not rise to the level of reversible error because the record contained sufficient evidence for the ALJ to determine the claimant's RFC).

Even assuming that the ALJ should have contacted Dr. Sardo regarding the conflicting onset dates, the Plaintiff does not meet his burden of establishing clear prejudice. He does not cite any evidence indicating that the ALJ would have reached a different disability determination had he obtained a clarification from Dr. Sardo about the onset dates given the other evidence he cited in discrediting her opinions.

As a result, remand for further development of the record on this issue is not warranted. *Robinson*, 365 F. App'x at 999.

The Plaintiff's remaining challenges to the ALJ's assessment of Dr. Sardo's opinions are likewise unavailing. The first of these is that the ALJ purportedly misconstrued the record by "suggesting that Dr. Sardo opined [the Plaintiff] is wholly precluded from bending or stooping." (Doc. 19 at 19). The issue with this argument is that Dr. Sardo did, in fact, opine that the Plaintiff can neither bend nor stoop when she responded to the query in the July and September 2013 questionnaires as to whether "there [are] any other limitations that would affect [the Plaintiff's] ability to work at a regular job on a sustained basis." (R. 369, 416).[7]

The Court similarly finds unconvincing the Plaintiff's other challenge that "even if the ALJ did not err by refusing to give the opinions from Dr. Sardo controlling weight, he still erred by failing to properly assign weight to those opinions based on the relevant factors enumerated in" the Regulations. (Doc. 19 at 20–21) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). As discussed previously, however, an ALJ is not required to address each of these factors explicitly in his decision and instead need only "provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton*,

---

[7] In referencing Dr. Sardo's assessment that the Plaintiff could neither bend nor stoop, the ALJ added that such a restriction "invariably beg[ged] the question" that, if it were true, how would the Plaintiff "ever be capable of getting into/out of a seated position." (R. 512). This gratuitous statement, while perhaps ill-phrased, does not provide grounds for remand because the ALJ provided other adequate support for his decision as previously explained herein. *See Donnell v. Astrue*, 2012 WL 6106412, at *8 (M.D. Fla. Nov. 21, 2012) (finding that an ALJ's anecdotal observation, even if improper, did not undermine the ALJ's adequately articulated reasons), *report and recommendation adopted*, 2012 WL 6106855 (M.D. Fla. Dec. 10, 2012).

431 F. App'x at 833.  Notwithstanding the varied arguments asserted by the Plaintiff, the ALJ articulated such good cause here and, as explained above, supported his determination with substantial evidence.  *Schink*, 935 F.3d at 1259.

2.

The Court also finds unpersuasive the Plaintiff's contention that the ALJ erred in affording little weight to the opinion of Dr. Hughes.  (Doc. 19 at 21–22).  An occupational medicine specialist, Dr. Hughes examined the Plaintiff once in June 2014.  (R. 438–44).  As part of that examination, Dr. Hughes reviewed the Plaintiff's prior treatment records, as well as x-rays of the Plaintiff's spine, knees, and hips.  *Id.* Dr. Hughes found based on his examination that the Plaintiff could occasionally lift up to five pounds, and could rarely—if ever—grasp, turn, and twist objects, utilize his hands/fingers for fine manipulations, or use his arms for reaching, including over his head.  (R. 442–43, 513).  Dr. Hughes also concluded that the Plaintiff's condition was "permanent," his prognosis "poor," and his ability to perform full time competitive work non-existent.  (R. 439).

In his decision, the ALJ largely disregarded these assessments on the grounds that they were inconsistent with the clinical signs/findings discussed throughout his decision.  (R. 513).  The ALJ also declined to credit Dr. Hughes's determination that the Plaintiff was unable to engage in full-time work on the basis that it constituted a "legal conclusion" on a matter reserved for the Commissioner.  *Id.*

17

The Plaintiff now asserts that the ALJ's rejection of Dr. Hughes's opinion predicated on the absence of any clinical or objective evidence is flawed because Dr. Hughes "referred to [the Plaintiff's] x-rays and lab studies as supporting his assessment." (Doc. 19 at 21). The Plaintiff also lists other items in the record the ALJ allegedly failed to consider. *Id.* These contentions are without merit.

The record evidence that substantiates the ALJ's decision includes that supplied by consultative examiner, Dr. Quan Tran. As the ALJ referenced in his decision, Dr. Tran saw the Plaintiff in August 2012 and found that he had intact hand and finger dexterity, as well as full grip strength bilaterally, which contradicted Dr. Hughes's determinations as to the Plaintiff's strength and ability to grasp, turn, twist, and use his fingers for fine manipulations. (R. 341, 510–11). As also identified by the ALJ, Dr. Hughes's findings were additionally inconsistent with Dr. Sardo's treatment notes throughout 2013 and 2014, which showed—in the ALJ's words—"nary an indication of a deficit in strength, sensation, upper extremity fine/gross manipulation or handling." (R. 511); *see also* (R. 377–82, 390–91, 394–96, 399–402, 405–07, 449–64, 465–69).

As for Dr. Hughes's opinion that the Plaintiff's limitations would render him "unable to perform full-time competitive work," the Court agrees that this conclusory assessment concerns an issue which rests solely within the province of the Commissioner and is therefore not entitled to any special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834

(11th Cir. 2017) (noting that, under the applicable Regulations, "the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner").

And, finally, with respect to the Plaintiff's assertion that there is evidence the ALJ neglected to take into account, this argument essentially invites the Court to "reweigh the importance attributed to the medical evidence" by the ALJ. *Lawton*, 431 F. App'x at 833 (citation omitted). This the Court cannot do. Only a finding that an ALJ's decision is not supported by substantial evidence is sufficient for a reviewing court to disturb the ALJ's findings. *Crawford*, 363 F.3d at 1159.

In sum, the Court finds that the record evidence cited in the ALJ's decision constitutes sufficient evidence to buttress his assignment of "little weight" to Dr. Hughes's opinion. As a result, this claim of error provides no grounds for reversal either.

3.

The Plaintiff's disagreement with the ALJ's determination to partially credit Dr. Molis's opinion fares no better. A state agency physician, Dr. Molis reviewed the Plaintiff's records in August 2013 as part of the SSA's reconsideration of the Plaintiff's SSI and DIB claims following their initial denial. (R. 88–107). Based on that review, Dr. Molis found that the Plaintiff could engage in a reduced range of light work. (R. 96, 106).

In his decision, the ALJ afforded "some weight" to Dr. Molis's assessment.  (R. 514).  In support of that finding, the ALJ noted that Dr. Molis was familiar with the governing Regulations, rulings, policies, and procedures; that he considered both the medical and nonmedical evidence before him; and that, while there were "voluminous records" that had been compiled since Dr. Molis rendered his opinion, such additional evidence "d[id] not necessarily change the pattern established at the time of the State agency assessment."  *Id.*  The ALJ found it necessary, however, to include additional restrictions beyond those imposed by Dr. Molis.  *Id.*

The Plaintiff now avers that the ALJ erred in granting more deference to Dr. Molis's opinion than to those of Dr. Sardo and Dr. Hughes because Dr. Molis was "a non-treating, non-examining consultant."  (Doc. 19 at 18–19).  This argument does not survive scrutiny.

State agency medical consultants are considered experts in the Social Security disability evaluation process, 20 C.F.R. §§ 404.1527(e), 404.1513a(b)(1), 416.927(e), 416.913a(b), and their determinations regarding the nature and severity of a claimant's impairments are accordingly considered expert opinion evidence, *id.*; *accord Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 825 (11th Cir. 2021) (per curiam) (finding no error in ALJ's reliance on state agency expert's opinion where claimant did "not point to any record evidence that contradict[ed] the consultant's opinion").  An ALJ may also credit the opinion of a non-examining, non-treating physician over that of a treating or examining physician if the ALJ has found good cause to discount the

treating or examining physician's opinions.  *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (per curiam) (finding that an ALJ properly discounted the treating physician's opinion by demonstrating good cause and did not err in granting some weight to the opinions of state agency medical consultants because there was substantial evidence to support the decision).

Here, the Court has already concluded that the ALJ properly discounted Dr. Sardo and Dr. Hughes's assessments.  As for the timing of Dr. Molis's opinion relative to the development of subsequent record evidence, the Plaintiff cites *Brightmon v. Social Security Administration, Commissioner*, 743 F. App'x 347, 352–53 (11th Cir. 2018) (per curiam).  In that case, the court found that the ALJ erred in assigning "great weight" to a state agency medical consultant's opinion because the medical record was "much more developed regarding [the claimant's] physical impairments" after the consultant rendered his opinion.  *Id.*  At the time of the exam, the only "evidence of note" was an x-ray showing merely mild issues.  *Id.* at 352.  After the state agency consultant rendered his determination, however, the claimant was diagnosed with several relevant conditions, and scans and other findings indicated that the claimant's condition had worsened.  *Id.* at 353.

*Brightmon* is readily distinguishable.  As an initial matter, the ALJ only gave Dr. Molis's opinion "some weight," not great weight as the ALJ did in *Brightmon*, because he recognized—and expressly acknowledged—that "there [we]re voluminous records since Dr. Molis's opinion."  (R. 514).  Further, while the record's later development

21

in *Brightmon* evidenced a material change in the claimant's health which conflicted with the state agency consultant's earlier findings, the record at the time of Dr. Molis's evaluation here was fairly consistent with the two-and-a-half years of records compiled after his assessment.  *See, e.g.*, (R. 91, 94, 101, 104) (noting, *inter alia*, that the Plaintiff had "a normal gait," there was "no swelling or inflammation," and the Plaintiff used a cane and had "minor degenerative changes" since 2012).  Additionally, the ALJ here did not limit his restrictions to those set forth in Dr. Molis's opinion but accounted for those the Plaintiff later developed as well.  (R. 514).  Because the record does not conflict with Dr. Molis's findings and the ALJ accounted for the record's development, the Plaintiff's reliance on *Brightmon* fails.  *See Jarrett*, 422 F. App'x at 874.  As a result, the ALJ did not err in assigning "some weight" to Dr. Molis's opinion.

B.

The Plaintiff's second claim of error is that the ALJ did not adequately "consider if [he] was disabled during [the twelve-]month period" between July 2011 and July 2012.  (Doc. 19 at 32).  This so-called "closed period" claim is readily disposed of.

It is implicit in the ALJ's finding here that the Plaintiff was not disabled at any time during the relevant period that he was also not disabled during any twelve-month period within that same time frame.  *See Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772–73 (11th Cir. 2006) (per curiam) (finding that the ALJ did not err in failing to consider a closed period because the ALJ determined the claimant was not disabled at

22

any time during the entire period and that the ALJ's determination was supported by substantial evidence); *McDaniel v. Astrue*, 2009 WL 2777716, at *10 (S.D. Ga. July 31, 2009) ("When the ALJ's opinion is supported by substantial evidence and he or she determines that a claimant is not disabled for any time during that entire period, the ALJ does not err in failing to consider a claimant's eligibility for a closed period of disability.") (citing *Jones*, 181 F. App'x at 773), *report and recommendation adopted*, 2009 WL 2905661 (S.D. Ga. Aug. 31, 2009).   More particularly, because the ALJ determined that the Plaintiff's period of disability did not commence until mid-April 2016, it follows that he considered the July 2011 to July 2012 time frame as well.   *See Jones*, 181 F. App'x at 773.

Even were that not the case, the Plaintiff bears the overall burden of proving he was disabled.   *Washington*, 906 F.3d at 1359 (citation omitted).   If the Plaintiff claims he was disabled from July 2011 to July 2012, he must tender evidence objectively proving his disability during that period.   *See* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling (SSR) 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016) (stating that the SSA will not typically "find an individual disabled based on alleged symptoms alone."). The Plaintiff did not do so.   As a result, he cannot claim that the ALJ did not consider that time frame, and his "closed period" argument therefore fails for this reason as well.   *See Washington*, 906 F.3d at 1359.

C.

The Plaintiff's final claim of error is that the ALJ did not properly evaluate his subjective complaints of pain and other symptoms for the period after 2012.  (Doc. 19 at 30–34).   In support of this claim, the Plaintiff argues that (1) the ALJ failed to provide "good reasons" for discounting the Plaintiff's subjective complaints made during this time frame; (2) the ALJ wrongly focused on the Plaintiff's work history when discrediting his reported symptoms; and (3) the ALJ erred by requiring that the Plaintiff's statements "regarding his limitations in activities of daily living be verified by third-party statements."  (Doc. 19 at 32–34).  All of these arguments are meritless.

1.

The evaluation of a claimant's subjective complaints is governed by the "pain standard."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain."  *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work.  20 C.F.R. §§ 404.1529, 416.929.  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and

24

intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence."[8] *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (per curiam)). The ALJ, however, "need not cite particular phrases or formulations" in performing this assessment, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain testimony, "the record must be

---

[8] On March 16, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p, 2016 WL 1119029, at *1. SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* The change in terminology does not, however, alter the substance of the Court's analysis. *See Yangle v. Comm'r of Soc. Sec.*, 2020 WL 1329989, at *4 n.2 (M.D. Fla. Mar. 23, 2020).

obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).   A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence.  *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, in April 2013, the Plaintiff reported injuries to his hips, legs, feet, ankles, and toes in addition to pain treatments for his back and shoulder. (R. 222–28). In the same month, he added that sitting, standing, walking, bending, and reaching produced "severe" pain "every day until I take meds."  (R. 230–31).   When he appealed the first time, the Plaintiff also included high blood pressure and toe numbness to his list of symptoms, alleging that they caused him difficulty sitting, standing, or walking for long periods.  (R. 244, 257).

At the ALJ hearing in July 2014, the Plaintiff complained of continued chronic back and knee pain, "very bad" joint swelling, and diabetes resulting in significant impacts on his day-to-day functioning.  (R. 41–56).   Then, at the ALJ hearing in December 2018, the Plaintiff testified that he continued to experience the same concerns and symptoms. (R. 529–46).  Specifically, he stated that he could only sit in one place for twenty to twenty-five minutes at a time; that he could only stand and walk for brief intervals; that he used a cane for balance; he had to rest every day for forty to forty-five minutes; and that his pain was a nine on a ten-scale.  (R. 533–36, 541).  He also described continued problems with his upper left arm that started in his

neck and radiated through his shoulder to his arm and claimed that he could not lift more than "ounces" overhead.  (R. 539).

In his decision, the ALJ referenced these complaints, along with the Eleventh Circuit's pain standard and his duty to account for "all symptoms and the extent to which th[o]se symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the [applicable legal requirements]."  (R. 19) (citing 20 C.F.R. § 416.929; SSR 16-3p, 2016 WL 1119029, at *1).  The ALJ also rendered an express credibility determination regarding the Plaintiff's reported symptoms, finding:

> the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not fully supported for the reasons explained in this decision.

(R. 510).

In support of this assessment, the ALJ engaged in a year-by-year analysis of the medical evidence, beginning in mid-2012, the first year in which there was objective evidence of the Plaintiff's impairments.  For that year, the ALJ discussed Dr. Tran's findings that "[t]here was some suggestion of reduced range of motion, along with complaints of pain and tenderness," but noted that Dr. Tran observed the Plaintiff to have a normal gait, intact hand and finger dexterity, and the ability to "walk[ ] 'without a cane or assistive device.'"  (R. 510).  At the same time, the ALJ acknowledged Dr. Sardo's 2012 treatment notes that the Plaintiff "exhibited 'slow, deliberate

27

movements,'" purportedly suffered from neck pain, and employed a cane. (R. 511). The ALJ further recognized that "there may be some support for the [Plaintiff's] allegations in [Dr. Sardo's] December 2012 treatment report." (R. 511).

As for 2013, the ALJ primarily addressed Dr. Sardo's examination records and assessments, including, among others, the lack of a consistent finding of "deficit[s] in [the Plaintiff's] strength, sensation, upper extremity fine/gross manipulation or handling;" the Plaintiff's occasional use of a cane; a few instances in which the Plaintiff experienced joint swelling; an MRI of the Plaintiff evidencing "some degenerative disc disease;" and x-rays of the Plaintiff's hips and knees showing "spurring" and "some osteoarthritis and effusion," respectively. (R. 511). The ALJ also referenced Dr. Sardo's May 2013 treatment note in which she acknowledged "that the [Plaintiff's] subjective pain was 'out of proportion' with the examination findings." (R. 406, 511).

With respect to 2014, the ALJ reviewed Dr. Sardo's documentation describing the Plaintiff's use of a cane "from time-to-time" and the "rare instances" he had any joint swelling, effusion, or an antalgic gait. (R. 512). The ALJ also observed, however, that there remained few indications that the Plaintiff suffered from any "deficit[s] in strength, sensation, [and] upper extremity fine/gross manipulation or handling." *Id.* In addition, the ALJ discussed the Plaintiff's visits with Pinellas County Health Department, which did not contain evidence to support the severity of the represented pain (R. 512–13) and addressed, among other things, an x-ray showing only mildly

degenerative discs, as well as another x-ray indicating the Plaintiff's left shoulder was normal (R. 512).

Regarding 2015, the ALJ referenced the continuation of the same patterns identified in Dr. Sardo's records for the previous years and also noted that the Plaintiff established care with Dr. Amitabh P. Gupta, a pain management specialist.  (R. 513).  The ALJ commented that Dr. Gupta found the Plaintiff had full strength and intact sensation and offered the Plaintiff conservative interventions, including steroid injections in the Plaintiff's ankles.  (R. 513, 731).  Additionally, the ALJ noted the Plaintiff's visit with Dr. Rickey Lockett, who was likewise charged with managing the Plaintiff's pain, and pointed out that Dr. Lockett consistently reported the Plaintiff had negative bilateral straight leg raises and full upper and lower body muscle strength. (R. 513, 744).  As for imaging, the ALJ identified yet another x-ray of the Plaintiff's ankle that revealed "no significant abnormality," while later ankle MRIs showed only mild peritonitis.  (R. 513).[9]  The ALJ concluded his overview of the medical evidence by stating that "it ha[d] been many years since any provider ha[d] opined the claimant is as limited as he alleges (and those that had noted such a mindset in the past, for reasons discussed above, have proven wrong.)."  (R. 514).

Against this backdrop, the Plaintiff's claims that the ALJ failed to provide good reasons for discounting his reported symptoms cannot stand.   (Doc. 19 at 32).  Contrary to the Plaintiff's assertions, the ALJ's analysis and review of his medical

---

[9] Because the Plaintiff only appeals the denial of SSI and DIB benefits up through April 11, 2016, the Court will not discuss the ALJ's finding for 2016, 2017, and 2018.

records was both thorough and extensive.   Furthermore, the ALJ supported his credibility determination by citing specific examples from the record that were inconsistent with the Plaintiff's subjective complaints, and there is substantial evidence to bolster the ALJ's determination.   As a result, the Court will not disturb the ALJ's credibility finding.   *Stowe*, 2021 WL 2912477, at *4 (declining to question the ALJ's conclusion on the claimant's credibility, noting that the ALJ pointed to inconsistencies between the claimant's reported symptoms and his physician's notes) (citing *Foote*, 67 F.3d at 1561–62).

2.

The Plaintiff's next argument that the ALJ impermissibly used his "sporadic" work history to discount his subjective complaints fails too.   (Doc. 19 at 33).   In his decision, the ALJ stated that the SSA

> [R]ecords show a rather uneven work record, with some years where the claimant worked at or above the substantial gainful activity threshold, though many other years of little to no earnings whatsoever.   To be sure, individuals might engage in other pursuits over the course of their life other than work (*e.g.*, military service, post-secondary education, volunteer work, raising children, etc.).   However, neither the claimant nor his representatives have provided much evidence regarding said circumstances.

(R. 510) (internal citations omitted).

The Court finds that the ALJ's review of the Plaintiff's employment background was not improper.   To begin, the ALJ is entitled to consider a claimant's work history when assessing the credibility of his reported symptoms.   20 C.F.R. §§ 404.1529(c)(3),

30

416.929(c)(3) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . We will consider all of the evidence presented, *including information about your prior work record*.") (emphasis added). Even were that not the case, the Plaintiff does not provide any evidence or argument that the ALJ actually used his work history to discount his subjective complaints. *See Washington*, 906 F.3d at 1359 (stating that a claimant carries the overall burden of proving he is disabled).

3.

The Plaintiff's final contention that the ALJ erred in requiring third-party evidence to "verif[y]" the Plaintiff's statements regarding his limited ability to engage in daily living activities is meritless. (Doc. 19 at 33). In his decision, the ALJ stated:

> In terms of activities of daily living, the claimant previously reported and testified that he has been severely limited in his capacity. Yet, he provided no third-party witness statement or report subscribing to any of these allegations. In April 2013, a Social Security claims representative noted during a face-to-face interview with the [Plaintiff that he had] difficulties with "walking." The [Plaintiff] reportedly moved slowly. Four months later, a different Social Security claims representative noted no apparent issues from a physical health standpoint, aside from the fact the claimant "seemed to be in pain throughout the interview." Because these observations would have been brief, they result in no overwhelming insight. Regardless, such observations are also, to an extent, in keeping with this residual functional capacity finding (including the fact that the

31

claimant receives an accommodation for the use of an assistive device when ambulating).

(R. 514) (internal citations omitted).

These comments by the ALJ do not provide a basis for remand. The Plaintiff's assertions notwithstanding, an ALJ may properly deem a claimant's remarks about his limited daily activities not to be credible when those statements are not verified. *See Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 764 (11th Cir. 2011) (per curiam) ("The ALJ did not create additional hurdles to the pain standard that required [the claimant] to objectively prove her limited daily activity; rather, the ALJ merely indicated that [the claimant's] testimony about her allegedly limited activities was insufficient to prove that she suffered from disabling pain."); *Gelbart v. Berryhill*, 2018 WL 4573145, at *7 (S.D. Fla. Sept. 25, 2018) ("[A]n ALJ may properly find that a claimant's testimony about limited daily activities is not credible where the statements were hard to objectively verify, given the weak medical evidence in support of the testimony.") (citations omitted); *Fielder v. Colvin*, 2014 WL 684683, at *15 (N.D. Fla. Feb. 21, 2014) (finding that the ALJ's statement that the "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" was a mere indication that the claimant's "statements regarding her limited activities did not compel a finding that she suffered from disabling pain.").

Consistent with the above authority, the ALJ's observation here about the absence of third-party evidence simply reflected his determination that the Plaintiff's allegedly limited daily activities were insufficient to prove disabling pain. *See*, *e.g.*, (R.

406, 511) (noting that, in May 2013, the Plaintiff complained of severe pain, but Dr. Sardo found that the Plaintiff's pain was disproportionate to her exam.); (R. 399–402, 405–07, 511) (indicating no significant changes in the Plaintiff's pain in May and June 2013).

Even were the Court to find otherwise, the ALJ's decision to discount the Plaintiff's subjective complaints is still independently supported by substantial evidence. *See Foote*, 67 F.3d at 1562 (commenting that a reviewing court may not disturb an ALJ's credibility finding if it is supported by substantial evidence). The court's decision in *Wolfe v. Commissioner of Social Security*, 2012 WL 3264916 (M.D. Fla. Aug. 10, 2012)—upon which the Plaintiff relies—does not compel a different conclusion. (Doc. 19 at 33). Although the Plaintiff cites *Wolfe* for the proposition that requiring the objective verification of a claimant's limited daily activities is inappropriate (Doc. 19 at 33), what he fails to include is that the ALJ in that case also, among other things, failed to articulate adequate reasons for discounting the claimant's pain and other symptoms, *Wolfe*, 2012 WL 3264916, at \*6. As discussed previously, the ALJ's decision here was both adequately supported in his decision and in the record. As such, the Court cannot find that the ALJ committed reversible error in concluding that there was insufficient evidence to verify the Plaintiff's claimed limited daily activities. *See Anderson*, 427 F. App'x at 764.

In sum, the ALJ sufficiently addressed the Plaintiff's reported symptoms and provided "specific and adequate reasons" supported by substantial evidence for

rejecting the Plaintiff's testimony regarding his subjective complaints. *Stowe*, 2021 WL 2912477, at *4. Remand on this basis is therefore not warranted as well. *See Werner v. Comm'r Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 29th day of September 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record